Case number 18-7177-NL. Keith Allen, NL, District of Columbia, Municipal Corporation, Appellant. Mr. Love, the Appellant. Mr. Morelli, the Appellant. Good morning. Good morning, and may it please the Court, Richard Love for the District of Columbia. The District can't be ordered to pay interest on judgment amounts that's prohibited by statute from paying. Doing so would contravene Congress's purpose in capping IDEA attorney's fees. Let's start with the text, though. What's your best textual argument that the 2009 Act precludes payment of interest? It doesn't say anything about interest. It says fees and attorney. Well, I think interest only runs on fees. There would be no interest without fees. It would contravene the purpose of the instituting the cap. We're back to purpose now. We'll get to your argument about purpose. I want your argument starting with text. Well, I think just as the District Court here rejected the argument that the absence of any reference to judgments meant that the cap was inapplicable when you had a judgment, the Court said, nor is there any reason to find that the judgment for attorney's fees are not subject to the cap because the Appropriations Acts do not specifically state they apply to judgments, and curiously they also said or interest. I think that's correct. The mere fact that the text doesn't refer to judgments, to interest, doesn't mean that it wasn't applicable to stopping interest. So textually, I think they go hand in hand. Just as the fees or a fee award, arguably interest attaches to a fee award, the prohibition on fees likewise would prohibit the interest. That seems clearly right if the statute is a prohibition on fees, which is what you just said, but it seems to be only a prohibition on payment. It's an appropriation provision, so the underlying entitlement to fees is undisturbed. Well, that's correct, but it does not limit the Court's authority to enter the award, but it does limit the District's ability to pay above $4,000. I think that for the amounts that the District is prohibited from paying, I think it's a reasonable inference that the prohibition runs also to the interest that would have attached to that amount of the judgment that the District is prohibited from paying. I mean, beyond the text, if I could, on some other points that we would submit supports the District's argument that the fee cap prohibits the assessment of interest on amounts above the cap. The purpose for the fee cap was to, and it was maintained for 10 years, was to stem the growth in legal expenses and the usurping of resources from education to attorney's fees. Subjecting the District to interest on fee awards that it could not pay clearly runs across purposes to stemming the growth in legal expenses. It's also contrary to a longstanding precedent that prohibits interest whenever payment of the principal debt is interdicted, and it would, we submit, absurdly subject the District to never-ending interest payments. I mean, ordinarily a party can avoid a post-judgment interest or the application of the post-judgment interest statute by making immediate payment, but here the fee cap, the law, foreclosed that possibility. Suppose we agree with you that it was erroneous to require the District now to pay interest on the entire sum of the judgments. Right. You don't, the District doesn't disagree, though, that it was appropriate to authorize the payment of some level of interest below the principal cap, right? Oh, yeah, we paid interest on the amounts up to $4,000. And how is that calculation made on, so is that the calculation of the amount of interest that's owed on the levels up to the $4,000 cap? It was based on 28 U.S.C. 1961, so it ran from the date of judgment at the rate set forth in the statute that was applicable at the time. I think it's the day before the judgment, whatever the treasury rate is, or I forget the exact language. And is that done, so it ran from the date of judgment, and is— Until payment. I'm sorry? Until payment. Until payment. So when you're calculating the amount of interest that's owed, given the existence of a cap, do you pretend as if at the date of the judgment the judgment is at $4,000, and then you calculate interest on that all the way through? Yes. That's the way it's done? I believe that's the way it was done in terms of what has already been paid. And the District is fine with that? So after the cap gets raised to $4,000, interest is owed, not interest on the full judgment, but interest on the judgment up to a level of $4,000? Correct. And you go back to the judgment, you basically act as if it said the judgment is $4,000, and then you calculate interest owed up to the date of payment? That's my understanding of what was done, yes. Okay. And you don't dispute that part of it? No, we don't dispute it, and as I said, that amount has already been paid. Yeah. Can I ask you about constitutional issues with the statute, at least as applied to preexisting judgments? It's not the entire scope of the statute, perhaps, but it's a major scope, right? So you have preexisting judgments, and then Congress says as to them, they can never be paid. Can I correct the Court? Sure. Because I don't think there are preexisting judgments here. Every one of these judgments were from day one subject to a fee cap. The first judgment, most of, I think there are ten judgments here, I think eight are from 2001 or seven are from 2001. The first fee cap was instituted in 1999. So they were all entered at a time where we would submit the plaintiff's entitlement to amounts above the cap. We're always contingent upon future congressional appropriations and authority to cover amounts in excess of the fee cap. Fee cap changed from 1999. It was a lower amount. Ultimately, it became $4,000. But all of these judgments from day one were subject to the contingency that payment over $4,000 or over X amount was prohibited. I'm sorry, but then that commits us to the proposition that the courts couldn't enter judgment at the time? No. I think in Callaway, this court said that the fee cap only prohibited the district's authority to pay. Right. It's about payment rather than entry of judgment. Correct. So we come back to the question I posed to you, which is we have a set of pre-existing judgments, and then Congress says very broadly and very categorically, we're not going to pay for these. And we have authority for the proposition that judgments are property for takings purposes. Why isn't that a problem? Well, I think as the district court found here, and these, that because these were always contingent from day one on the limitations set forth in the fee cap, there was never a vested property interest. These interests, the entitlement to the amounts above the fee awards, was always contingent upon future congressional authorization. And that's why there was no takings. That makes sense if the claim were formulated as a retroactivity-based due process argument about unsettling expectations. But for takings purposes, what seems most relevant is that the pre-existing judgments give rise to property rights. Well, I guess I get back to my point, which was they were always. I mean, it wasn't like they were settled judgments and then subsequently the Congress placed this impediment on payment. It always was there. I see that my time's up. Unless the court has any questions, I did want to reserve two minutes in rebuttal. I'll give you some time back. Thank you. Good morning. Good morning, Your Honor. May it please the court, my name is Michael Morrelli. And at the outset, I'd like to reserve two minutes for rebuttal. To begin- Wait. You may leave. I'm sorry. For a reply, for a reply. For the cross-appeal. Okay. It's a cross-appeal, Your Honor. Oh, go ahead. I'm sorry. At the outset, this case is about 224 disabled children who were failed by the District of Columbia, as well as their 224 sets of parents, as well as 397 successful administrative hearing officer decisions, each of which represents a failure by the district to do its duty and comply with the law. These judgments are now old. The named plaintiff in this case, Mr. Allen, is over two decades older, as is his attorney. The district court did not abuse this- If I may, I'm going to address the interest issue first. The district court did not abuse its discretion in its award of interest payable immediately on uncapped judgment amounts. Section 28 U.S.C. section 1961A is clear on this. It states that interest shall run from the date of judgment. There's nothing in the IDEA statute or in the 2009 Act PCAPP that places any burdens on the running of interest from the date of judgment. What about- Go ahead. What about an argument that it's just inherent in the concept of interest, which would be Judge Griffith's textual hook, right? A wrongful failure to pay money back on time. And you don't have that and can't have that when there's a legal prohibition on making the payment. Right, Your Honor. I would say that interest is not merely due on wrongful delays in payments, but delays in payments generally. So in this case, rightly or wrongly, Congress decided that- Fair enough. But just to make it a little more precise, payments where payment of the principal is legally prohibited. The payment itself is legally barred from congressional appropriations only. D.C. is legally prohibited from stopping the accrual of interest by making payment on the underlying principal, which is the fee amount over $4,000. I would disagree, Your Honor. D.C. is legally prohibited from using congressional appropriations, this one set of, one pool of money to pay- Under any appropriation for the district. Under any federal appropriation for the district. So how do they pay? For example, in our original motion to enforce, which is the joint appendix at page 82, we noted that there was a Budget Autonomy Act, which was moving through the district and into Congress. And had that passed, that would have provided another source of funds from which the district could pull that was not subject to the fee cap, as the fee cap was only a cap on federal appropriations. Divining the intent of Congress is always a perilous sort of exercise. Sure. But in here, it's pretty clear what Congress is trying to do, right? They were concerned about attorneys making more than $4,000 on an IDA claim. It was swallowing up the whole program. Your solution to this is to have these, have them pay this interest fee, which would in fact swallow the program. How is that consistent with the clear congressional intent here that put a cap on this? It was a program that they thought had gotten out of control. Right, you're right. Well, I would say that the congressional intent is not necessarily clear. As the signing statement when the bill was read into law stated that the Section 814 of the 2009 Appropriations Act lifted the fee cap on IDA attorneys' fees. So I don't know that I would agree that the— After a certain time, but not for the ones that interest, haven't thought of as here, Congress was clear that there was a cap. They didn't want more than the statutory cap being paid out to attorneys. Right, Your Honor. But to the degree that there's incongruities between Congress, between what Congress has authorized to pay and what interest is due on that amount and whether or not it's capped interest payments is the provision of Congress, Your Honor. It's not for us, really, or it's not— How would it work in practice if it's in fact true that interest is constantly running on the entire principal amount, even if the district is barred from paying the principal amount about the cap from congressional appropriations? Right, Your Honor. What happens so that every day you come in and say, here's the amount that I'm due at the end of the day? Well, given it's annually compounding, I think it would probably be every year. So it's just an annual exercise that— It would be an annual exercise until Congress lifts the fee cap. So the cap on fees is converted into a very generous annuity for you. If that's one possible interpretation. The other is that Congress has decided— So we are arguing that Congress has in fact lifted the fee cap, but assuming for the sake of argument that they have not, then it's up to Congress to lift the fee cap. In the meantime, interest would still be due on that entire judgment amount, collectible now or collectible later. The problem we run into there is people are finite while the district is not. So there is a time limitation in terms of mortality, Your Honors. So we, the Allen Plaintiffs By-and-Through Council, have petitioned the City Council, petitioned the CFO, have petitioned Congress to revisit this issue. And it seems that Congress, through its inaction, is uninterested in revisiting the fee cap statute. In addition, the district's Office of Attorney General, upon Mr. Drake's petition to D.C. City Council, unilaterally came in and objected to the City Council even going to Congress and petitioning for removing the fee cap, which would immediately resolve this issue, as then the principal and interest amounts would be immediately due. Interest would stop running. So if the interest is continually running, it's only through the district's own action and inaction. We have also alleged that the district drafted the fee cap statute. I'm sorry, the district's own inaction through what, not going to Congress? Through not going to Congress and its submissions towards the district's budgetary appropriation. The D.C. City Council has a part in it. We're not accustomed to being a backstop when the political process doesn't work. We're accustomed to interpreting statutes and constitution, but we're not here to fix political problems. I understand, Your Honor, but to that degree, then, the running of interest while the fee cap is in place would seem to be a political problem. It would not be within this court's purview. And as the court in Plout and in Callaway said, these sorts of incongruities are for Congress to resolve. It's not for the courts. To that degree, this interest argument was also weighed by the district. The district did not raise it in numerous chances over the course of two years of litigation in the court below. As Judge Lambert clearly said, the district failed to raise this objection both in its original objections to our motion to enforce, as well as in oral argument, and later in its objection to the report and recommendation, at which point Judge Lambert incorporated the magistrate judge's findings where he calculated interest due on the entirety of the judgment amount. I notice you're in your rebuttal time. Yes, Your Honor. Thank you. Very briefly, Your Honor, this case is not about mortality. It's not about special ed services. It's an action to collect on an attorney's fee award. Nor is there any issue with regard that was raised or fully flushed out in terms of there being other sources of funds that Congress may not have appropriated. What's your answer on that argument? Well, to the extent we addressed it in our brief very briefly in that it was forfeited. It never was raised that there are other funds from which that are not subject to the fee cap. It was never an issue that was raised below. It was mentioned quite briefly in the briefs, and our response was, one, it was forfeited because it wasn't raised below, and two, it was never flushed out even just merely mentioning it isn't sufficient to raise it as an issue in this court. Can the district raise and spend money on its own under the Home Rule Act or whatever without congressional appropriations? I don't believe so. I mean, I haven't fully researched that issue, so it's a little off the top of my head, and I hesitate to do that, but I don't believe so. And maybe forfeiture is the answer. I mean, if we were dealing with a state and Congress said no federal funds may be used to pay these, then their case would be pretty compelling, which is just, well, pay it out of your own money. Right. In terms of 28 U.S.C. 1961, I mean, you can't look at that statute in a vacuum, and we've set forth, I think, several reasons. I won't repeat myself as to why its passage doesn't support an award of interest in this circumstance. Finally, on the waiver, I think it's set forth in our brief, but I do just want to very briefly repeat that the district never had notice that from the reporter recommendation or from the underlining referral in the August 2015 order of the district court that immediate payment of interest on judgment amounts that exceeded the cap was an issue under consideration. We were ordered to pay $4,000 less anything already paid plus interest. It was our understanding that interest ran only on the amounts up to the cap, and although the court ordered the magistrate judge to calculate the remaining judgment plus interest through September 30, 2015, he did so with the express condition that that should be calculated so the amount would be available if Congress authorized future appropriations. So for all those reasons, the reasons we set forth in the brief, we think the court erred in finding that we waived our objection to interest, plus we also set forth that the issue was passed upon and that we are in an extraordinary situation since it would be manifestly unjust to require us to pay interest, potentially never-ending interest, on amounts of principle we are prohibited from paying. We can never stop the running from interest until there is some congressional change. Thank you. Thank you, Your Honor. Just to address four last points. First, in response to Judge Katz's question, let's say there is another pool of money. We did raise this issue in a motion before this court to supplement the record, identifying two potential sources of funds that the district could use that are not subject to congressional appropriations. However, that motion was denied. I don't want to go further into it, but in addition, the good faith argument, whether or not the district acted in good faith and fair dealing, was raised before the magistrate judge in an oral argument for Judge Lambert. It just wasn't fully argued in our briefs. We expounded upon that argument in our briefs. Additionally, in terms of our argument regarding whether or not the district court passed on the waiver, we used an incorrect word in our brief. We should have said that we should refer to the interest objection rather than the interest argument. I think that would have been clearer. The district court did not pass on the interest argument. However, it did address the objection, the underlying merits of the objection. Finally, Your Honor, both Calway and Whatley, two prior cases in the D.C. Circuit that concerned this similar fee cap statute, do not concern final judgments. This case, Ms. Shallon's case, is unique in that we have final judgments for attorney's fees. In Calway, there was a challenge to the fee cap statute itself, while in Whatley, the appeal was a denial of request for above-cap fees. At no point in either one of them was there a final judgment. Therefore, this case is unique. The fee cap statute does not address final judgments or interest. The district court did not abuse its discretion in awarding interest over the fee cap, and the district court did incorrectly decide that to continue to deny payment of the entire principal judgment amounts would not be an unconstitutional taking in violation of separation of powers. Thank you, Your Honors. Thank you very much. The case is submitted. The case is submitted.
judges: Griffith, Srinivasan, Katsas